ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NANCY S. HOLMES, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-668-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A. STATEMENT OF THE CASE

Plaintiff Nancy Holmes ("Holmes") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"). In July 2006, Holmes applied for disability insurance benefits alleging that she became disabled on May 6, 2001.[1] (Transcript ("Tr.") 15; see Tr. 77-81.) She later amended her alleged onset date to November 5, 2005, the date she was involved in

---

[1] Holmes' insured status for disability insurance benefits expired on December 31, 2006. (Tr. 15.)

1

an automobile accident. (Tr. 15, 27-28.) Her application was denied initially and on reconsideration. (Tr. 15, 46-55.) The ALJ held a hearing on March 3, 2008 and issued a decision on April 23, 2008 that Holmes was not disabled. (Tr. 15, 12-22.) Holmes filed a written request for review, and the Appeals Council denied her request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-5, 8, 10.)

B. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions govern disability insurance. *See* 20 C.F.R. Pt. 404 (disability insurance). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §

404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

C. ISSUES

1. Whether the ALJ applied the correct legal standard in weighing the treating source opinion.

2. Whether the ALJ properly evaluated Holmes' credibility.

3

D. ALJ DECISION

In his April 23, 2008 decision, the ALJ noted that Holmes met the disability insured status requirements under Title II of the SSA from November 5, 2005, the alleged onset date of disability, through December 31, 2006, the date she was last insured for disability insurance benefits under Title II. (Tr. 21.) He stated that Holmes had not engaged in any substantial gainful activity since November 5, 2005. (*Id.*) The ALJ further found that Holmes had the severe impairments of "chronic neck and back pain due to degenerative disc disease of the cervical and lumbar spine, cervicalgia, and migraine headaches." (*Id.*; *see* Tr. 16.)

Next, the ALJ held that none of Holmes' impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 16, 21.) As to Holmes' credibility and residual functional capacity ("RFC"), the ALJ stated:

> On February 25, 2008, the claimant's chief complaints were intractable headaches and neck pain. The claimant reported that she has to [sic] up to 12 headaches per month and can be rated as 8-10/10 on a pain scale. She reported that her headaches were made worse with motor vehicle accidents. She said that these headaches can last for hours and days and she does have difficulty with sleeping, in spite of medications. She reported that her current medications consisted of Tiazac, Allegra, propoxyphene, Lovastatin, Tenormin, Imitrex, Topamax, Lyrica, Protonix, and Tizanidine. . . .
>
> . . . .
>
> The Administrative Law Judge must next determine the claimant's residual functional capacity . . . . In assessing the claimant's residual functional capacity, consideration must be given to subjective allegations in accordance with the criteria found in 20 CFR § 404.1529 [and] Social Security Ruling 96-7p. The claimant testified at the hearing that she was last employed in 2001 as a hotel desk clerk. She asserted that she stopped working due to pain in her lower back and migraine headaches. She reported that her migraines, back pain, and neck pain have increased since the motor vehicle accident in November 2005. She indicated that she received a settlement from the insurance company. She noted that she

4

received pain management after the accident for about six months. She asserted that she has not recovered from her neck and back injuries, and her migraines have gotten worse now. She reported that when she gets a migraine headache she usually takes medication and goes to bed. She reported that she is on Lyrica which has helped somewhat for migraine and pain. She noted that Lyrica makes her drowsy and causes vertigo, but Dr. Shah has adjusted her medication. She reported that she was having 8-10 migraine headaches a month, but now she has about 15 migraine headaches a month. She indicated that she takes suppository medication and goes to bed. She said that she has been under the care of Dr. Shah since 2002. Furthermore, the claimant reported that on a typical day she spends time lying down on [an] ice pack and she takes medication. She asserted that her husband performs all the chores and prepare[s] meals. She said that she drives occasionally to Wal-Mart to pick up medications. She noted that she can sit about 30 minutes and then her back starts hurting, and she can stand "off and on" about 35 minutes. She said that she can only lift 7-8 pounds and only walk to the end of the block. She reported that the injections in her back helped some, but she has not returned for additional injections.

The Administrative Law Judge recognizes that the claimant may experience some degree of pain or discomfort at times of overexertion due to her early degenerative arthritis changes in her knees. However, even moderate levels of pain are not, in and of itself, incompatible with the performance of certain levels of sustained work activity. In this case, neither the objective medical evidence nor the testimony of the claimant, in addition to considering non-medical evidence, establishes that the claimant's ability to function is so severely impaired as to preclude work at a sedentary level. Additionally, due to the claimant's migraine headaches, the undersigned restrict[s] her to those jobs with low end of detail work instructions and no more than frequent rotation, extension, and flexion of the neck.

(Tr. 19-20.) The ALJ further stated that the "claimant's statements concerning her impairments and their impact on her ability to work are not substantiated by the objective medical evidence to the extent alleged to support a finding of disability." (Tr. 21.)

In reaching his conclusion regarding Holmes' RFC, the ALJ went through the medical evidence in the record, stating:

The documentary medical evidence demonstrates that the claimant was followed-up by primary care physician Michael E. Truman, D.O., for a history of migraine headaches, cephalgia, allergies, hypertension headaches, allergies, and

5

congestion since July 2001. Beginning in April 2003, the claimant was followed-up by family physician Riaz Haider, M.D. The progress notes indicated monthly visits to Dr. Haider, for various physical complaints including urinary tract infection, headaches, GERD, sinusitis, constipation, allergic conjunctivitis, bodyache, and insect bites.

Dr. Haider referred the claimant to neurologist Rizwan Shah, M.D., for frequent migraine headaches in February 2004. The claimant was diagnosed with common migraine, cervicalgia, and insomnia, and was started on various medications for her symptoms at this time. At a follow-up visit in May 2004, the claimant reported some improvement of her migraine headaches with Topamax. At a follow-up visit in July 2004, the claimant reported that she has had neck pain for about a month and that she has not been sleeping well. The claimant was diagnosed with occipital neuralgia. An MRI scan of the cervical spine as well as injection in the occipital area was recommended at this time. A July 2004 MRI scan of the cervical spine revealed an [sic] 2mm. disc bulge at the C5-6 level without nerve cord impingement. The progress report indicated that the claimant was maintained on Neurontin and Topamax. The frequency of the visits with Dr. Shah was reduced to every six months.

The claimant was also seen by various physicians at Azle Family Practice. At a follow-up visit in September 2005, the claimant complained of neck pain and was prescribed Flexeril and Darvocet for her pain symptoms. The progress notes indicated monthly visits for some physical complaints.

At a follow-up visit with Dr. Shah in October 2005, the claimant reported increased pain in her neck. The claimant was advised to increase her Topamax and Neurontin. Additionally, she was referred for a steroid injection for cervicalgia and occipital neuralgia.

At a follow-up visit with Dr. Myers in November 2005, the claimant reported that she was in a motor vehicle accident. The claimant's physical examination revealed decreased range of motion of the neck from side to side and tenderness in the left side with decreased neurological deficits. The claimant was diagnosed with neck and back strain and was prescribed Zanaflex and Darvocet for her symptoms. At a follow-up visit two weeks later, the claimant reported improvement in her neck, but she was still having low back pain with numbness in her right leg. The claimant was prescribed Medrol dosepack at this time. At a follow-up visit in December 2005, the claimant reported that her right leg was still falling asleep. The claimant was diagnosed with musculoskeletal low back pain. She was advised physical therapy for a month. An MRI scan of the lumbar spine revealed a small disc bulge at the L4-L5 level without neural encroachment, small

left L2-L3 disc protrusion without neural forminal narrowing, and mild right posterolateral annular fissuring involving the L3-4 intervertebral discs.

At a follow-up with Dr. Shah in January 2006, the claimant reported that she had a motor vehicle accident and totaled her car. She complained of neck and back pain. The claimant reported that she was undergoing physical therapy and would like to get an epidural steroid injection after therapy. The claimant was prescribed Lidoderm patch for the affected area.

In March 2006, the claimant was seen by Dr. Myers for complaints of neck pain. The claimant reported that she was still having some left hip pain. At this time, the claimant was referred to a chiropractor. The claimant was noted to having ongoing back and neck pain. However, an additional follow-up visit with Dr. Meyers concerned her lipids, sinusitis, and hypertension.

At a follow-up visit with Dr. Shah in May 2006, the claimant complained of neck and back pain and that her primary care physician was referring her to a neurosurgeon. The claimant reported that she had x-rays and a bone scan. She reported that the medication was helping.

(Tr. 16-17 (internal citations omitted).)

In his decision, the ALJ continued to review the medical evidence in the record, stating:

On September 2006, the claimant was referred to orthopedic surgeon James E. Laughlin, D.O., for complaints of pain in the cervical and lumbar spine with suboccipital headaches. The claimant's examination showed decreased range of motion, muscle spasm, and tenderness on palpation over the paravertebral muscles. Lasegue's test and Patrick test were bilaterally negative. There was no extensor toe weakness. Achilles and patellar reflexes were active and equal. The claimant was able to toe and heel walk. There were no neurological deficits. However, the claimant was noted to have trigger points. The examination of the cervical spine showed restricted range of motion. . . . There was pain on the suboccipital nerves, but no neurological or vascular deficits. The compression test was negative. The claimant was diagnosed with cervical and lumbar sprain with trigger points and suboccipital neuritis. Dr. Laughlin opined that the claimant did not show any evidence of facet disease or radiculopathy. However, he noted that the claimant does have significant muscle spasm secondary to tearing of the ligaments in the cervical and lumbar spine. . . . The claimant was given non-narcotic pain and muscle relaxing medication. Subsequently, the claimant underwent trigger point injection of the L3-4, L4-5, and L5-S1 lumbar facet muscle groups. The claimant also underwent trigger point injections of the trapezius and rhomboid muscle group, cervical trapezius

muscle group, and C5-6 facet muscle group. In October 2006, Dr. Laughlin opined that the claimant's predominate problem was muscle spasms. The Administrative Law Judge notes that no additional follow-up with Dr. Laughlin was indicated in the medication reports.

In November 2006, Dr. Shah reported that the claimant has been managing pain. The claimant reported that she had been to a neurosurgeon and no surgery was recommended. In March 2007, the claimant returned to Dr. Shah with complaints of increased headaches. The claimant was advised to increase Neurontin and Topamax at this time. However, additional follow-up visit indicated routine visits. An MRA imaging of the head and the MRI scan of the brain performed in December 2007 were both within normal limits.

Dr. Shah completed a spinal impairment questionnaire on behalf of the claimant on July 20, 2007. He reported that he initially examined the claimant on April 25, 2004, and he sees the claimant every 3-4 months. He diagnosed the claimant with intractable common migraine and muscle contraction headaches, cervicalgia, chronic low back pain, occipital neuralgia, insomnia, and history of motor vehicle accident. He noted that the claimant had a chronic condition with symptoms of mild cervical tenderness and spasms with mild crepitus in her neck. However, he indicated that the claimant had no sensory loss, muscle weakness or muscle atrophy. He noted that the claimant had a positive straight leg raising on the right. He indicated that the claimant's primary symptom was sharp pain in her neck and lower back always associated with headaches, about 15 times in a month. He reported that the claimant can only lift/carry 5-10 pounds occasionally. The claimant's medications consisted of Neurontin, Topamax, Zanaflex, Imitrex, and Darvocet N100. Furthermore, he indicated that the claimant has undergone physical therapy, chiropractic manipulation, and acupuncture. He noted that the claimant experiences pain frequently that is severe enough to interfere with attention and concentration and the claimant is incapable of even "low stress" work. Dr. Shah opined that the claimant was unable to work and that she was totally disabled. Although the medical opinions of a treating physician are generally entitled to great weight, the legal determination of disability is reserved exclusively to the Administration. Additionally, the undersigned is free to object to any physician's opinion when the evidence supports a contrary conclusion. The Administrative Law Judge notes that the progress notes from Dr. Shah indicated that the claimant's follow-up was six months in duration for routine follow-up and her headaches were pretty much controlled with medication. At a follow-up visit in November 2006, the claimant indicated that she was managing her pain.

On February 25, 2008, the claimant's chief complaints were intractable headaches and neck pain. The claimant reported that she has up to 12 headaches

per month and can be rated as 8-10/10 on a pain scale. . . . She said that these headaches can last for hours and days and she does have difficulty with sleeping, in spite of medications. She reported that her current medications consisted of Tiazac, Allegra, propoxyphene, Lovastatin, Tenormin, Imitrex, Topamax, Lyrica, Protonix, and Tizanidine. The claimant's physical examination revealed that she was in no acute distress. She had mild tenderness and mild spasm in the paraspinal muscles. Her neurological examination was within normal limits. The claimant was diagnosed with intractable common migraine and muscle contract headaches, occipital neuralgia, cervicalgia, chronic lower back pain, and motor vehicle accident. The claimant was advised to continue Lyrica along with Zanaflex at bedtime. She was advised to continue Topamax as a preventative medicine for migraine headaches. She was to use Imitrex for acute headaches and Davorect-N100, as needed for headaches and pain.

(Tr. 17-19 (internal citations omitted).) In addition, the ALJ did not give any probative weight to the RFC determinations made by the State Agency Medical Consultants ("SAMCs") that Holmes was capable of a full range of light work "due to additional evidence presented at the hearing such as the testimony of the claimant and the vocational expert." (Tr. 19.)

The ALJ opined, based on his RFC assessment, that Holmes was not able to perform her past relevant work. (Tr. 20-21.) However, the ALJ found that there were a significant number of jobs in the national economy that Holmes could perform; thus, she was not disabled. (Tr. 20-22.)

E.   DISCUSSION

   1. Evaluation of Treating Physician's Opinion

Holmes claims, in essence, that the ALJ erred when he failed to give controlling weight to the opinions of Rizwan Shah, M.D. "Shah", Holmes' treating neurologist, without applying the required factors in 20 C.F.R. § 404.1527(d) in analyzing Shah's opinions. In addition, Holmes argues that there is not substantial evidence supporting the ALJ's rejection of Shah's

opinions in determining Holmes' RFC. (Pl.'s Br. at 10-13.) The defendant, on the other hand, argues that the ALJ properly considered Shah's opinions and did consider the factors set forth in 20 C.F.R. § 404.1527(d). (Def.'s Resp. at 13-20.) The defendant claims that the ALJ properly rejected part of Shah's opinion as it "contradicted the medical record as a whole and was not supported by any objective medical evidence." (Def.'s Resp. at 13.)

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). *See also* 20 C.F.R. § 404.1527(e). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Newton*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must

evaluate the following: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[2]

In determining that Holmes had the RFC to perform sedentary work "with low end of detail work instructions and no more than frequent rotation, extension, and flexion of the neck," the ALJ reviewed the evidence in the record, including the opinions of Shah. (Tr. 13-15.) Contrary to Holmes' contentions, it is not apparent that the ALJ rejected all of Shah's opinions. In fact, the ALJ appears to rely on portions of Shah's opinions in finding that Holmes was capable of sedentary work with certain additional limitations. The ALJ did reject Shah's ultimate opinion in the July 2007 Spinal Impairment Questionnaire that Holmes was unable to work and was totally disabled. Such a rejection, however, is not error as the ALJ is not bound by Shah's opinion on the ultimate issue of whether Holmes is disabled. Conclusory findings by a treating physician that a patient is "disabled" or "unable to work" are not to be given any special

---

[2] Pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) *only* if there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). An ALJ does *not* have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

significance because legal conclusions regarding disability are reserved to the ALJ. *Frank*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)).

Nevertheless, the Court finds that the ALJ did follow the statutory analysis before rejecting Shah's ultimate opinion that Holmes was disabled. Although the ALJ did not make an explicit finding as to each of the factors in 20 C.F.R. § 404.1527(d), his discussion of Shah's opinions shows that he considered each factor in reaching his decision to reject Shah's opinion that Holmes was disabled. To begin with, in his decision, the ALJ recognized that the medical opinions of a treating physician are generally entitled to great weight. (Tr. 18.) As to factors one and two, it is apparent that the ALJ was aware of the examining relationship and treatment relationship between Shah and Holmes as he specifically indicated that Shah had assumed care of Holmes in February 2004 based on a referral from another doctor and treated Holmes in time periods ranging from every three to four to every six months. (Tr. 16, 18.) As to factors three, four, and six, the ALJ indicated that he rejected Shah's ultimate opinion that Holmes was disabled because he did not find such opinion was supported by the evidence, specifically noting that Shah had previously indicated in progress notes that Holmes' headaches were "pretty much controlled with medication" and that Holmes indicated in November 2006 that she was managing her pain. In addition, prior to reaching this conclusion, the ALJ went through a detailed recitation of all the other medical evidence in the record, including the findings of multiple other doctors. (Tr. 16-20.) As to factor five, the ALJ clearly recognized that Shah was a neurologist. (Tr. 16.)

The next issue is whether the ALJ's decision to reject Shah's ultimate opinion in assessing Holmes' RFC is supported by substantial evidence. RFC is what an individual can still

do despite his limitations.[3]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 23 8F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all the symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184, at *5 (emphasis in

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

13

original). The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), superseded by SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).

In this case, the ALJ found that Holmes had the RFC to perform "sedentary work[4] activity with low end of detail work instructions and no more than frequent rotation, extension, and flexion of the neck." (Tr. 21.) (footnote added) In making this determination, the ALJ, as discussed above, rejected the ultimate opinion of Shah that Homes was totally disabled. (Tr. 18.) In addition, the ALJ specifically rejected the RFC opinions of the SAMCs, who found that Holmes was capable, in essence, of a full range of light work. (Tr. 19; *see* Tr. 122-29, 143.) Instead, the ALJ noted, *inter alia*, the following evidence in the record: (1) a November 2005 physical examination by Kriss Myers, M.D. ("Myers) indicating that Holmes "had decreased range of motion of the neck from side to side and tenderness in the left side with decreased neurological deficits" (Tr. 17; *see* Tr. 214); (2) an MRI scan dated December 2005 that "revealed a small disc bulge at the L4-L5 level without neural encroachment, small left L2-L3 disc protrusion without neural foraminal narrowing, and mild right posterolateral annular fissuring involving the L3-4 intervertebral discs" (Tr. 17; *see* Tr. 139-40); (3) a May 2006 examination with Shah in which Holmes indicated that the medication was helping with her pain; (4) a

---

[4] Sedentary work involves sitting for about six hours out of an eight hour work day and lifting items weighing no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); *see* SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996). In addition, walking and standing are required occasionally, which is generally no more than two hours out of an eight-hour workday. *Id.*

14

September 2006 examination by orthopedic surgeon James Laughlin, O.D. ("Laughlin"), indicating that Holmes had: (a) decreased range of motion, muscle spasm, and tenderness on palpation over the paravertebral muscles, (b) no extensor toe weakness, (c) active Achilles and patellar reflexes, (d) no neurological deficits, (e) trigger points, (f) restricted range of motion of the cervical spine, (g) muscle spasm and tenderness on palpation over the paravertebral muscles, and (h) pain over the suboccipital nerves (Tr. 17-18; *see* Tr. 137); (5) an October 2006 opinion by Laughlin that Holmes' predominate problem was muscle spasms (Tr. 18; *see* Tr. 131); (6) a December 2007 MRA of the head and MRI of the brain indicating that both were within normal limits (Tr. 18; *see* Tr. 282, 286); (7) a November 2006 report by Shah that Holmes "has been managing pain" (Tr. 18); (8) Shah's notation in the July 20, 2007 spinal impairment questionnaire that Holmes could occasionally lift or carry up to ten pounds (Tr. 18; *see* Tr. 172-73); and (9) Holmes' testimony that she had fifteen migraines per month, her husband performed all the chores and meals, she could sit about thirty minutes and stand "off and on" about 35 minutes, and she could only lift seven to eight pounds (Tr. 19).

Based upon the above evidence in the record, the Court concludes that substantial evidence supports the ALJ's RFC determination. To begin with, sedentary work involves the lifting of items weighing no more than ten pounds. 20 C.F.R. § 404.1567(a). Holmes, herself, testified that she can carry seven to eight pounds and Shah opined that Holmes could occasionally lift or carry up to ten pounds. In addition, sedentary work involves sitting for six hours out of an eight-hour workday. There is no evidence, beyond Holmes' own testimony, that Holmes was not capable of sitting for long periods of time, as required in sedentary work. In fact, in the spinal impairment questionnaire, Shah did not give an opinion whether Holmes was

capable of sitting, standing, or walking in an eight-hour workday, indicating instead that such information was "unknown." (Tr. 172.) In addition, by providing additional restrictions in his RFC determination, the ALJ accounted for the evidence showing that Holmes suffered from migraine headaches and had a restricted range of motion in her spine. Because substantial evidence supports the ALJ's RFC determination, remand is not required.

2. Credibility

In her brief, Holmes argues, in essence, that the ALJ failed to make a formal credibility determination based on the evidence and failed to properly evaluate her credibility pursuant to the seven factors set forth in 20 C.F.R. § 404.1529(c). (Pl.'s Br. at 13-15.) In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529(b); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *2. A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or

other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 CFR § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995). A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

Contrary to Holmes's claims, the ALJ did make a formal credibility determination. In his decision, he stated that Holmes' "statements concerning her impairments and their impact on her ability to work are not substantiated by the objective medical evidence to the extent alleged to support a finding of disability." (Tr. 21.) In fact, the ALJ specifically recognized that Holmes "may experience some degree of pain or discomfort at times of overexertion" but found that even

17

moderate levels of pain were not incompatible with "the performance of certain levels of sustained work activity." (Tr. 20.) The ALJ found that "neither the objective medical evidence nor the testimony of the claimant, in addition to considering non-medical evidence, establishes that the claimant's ability to function is so severely impaired as to preclude work at the sedentary level." (*Id.*) In other words, the ALJ found that Holmes' testimony and other statements were generally credible but they did not support the conclusion that she was incapable of performing sedentary work.[5]

Although the ALJ could have been more precise in setting forth the factors in 20 C.F.R. § 404.1529, it is clear from his decision that he did consider such factors. To begin with, the ALJ acknowledged that he had a duty to consider Holmes' "subjective allegations in accordance with the criteria found in 20 CFR § 404.1529 [and] Social Security Ruling 96-7p." (Tr. 19.) As to factors one and seven of the factors set forth in 20 C.F.R. § 404.1529(c), the ALJ reviewed Holmes' daily activities, noting that Holmes testified that on a typical day she spent her time laying down on ice packs and taking medication and that her husband performed all the chores and prepared the meals. In addition, the ALJ acknowledged that Holmes testified that she occasionally drove to Wal-Mart to pick up her medications, could sit about 30 minutes, stand "off and on" about 35 minutes, lift only seven to eight pounds, and walk only to the end of the block. (Tr. 19.) As to factors two and three, the ALJ noted that Holmes testified that she suffered from increased migraines, back pain and neck pain that had worsened over time since her automobile accident in November 2005 and that she was now having about fifteen migraine

---

[5] This conclusion is further supported by the fact that the ALJ declined to give probative weight to the opinions of the SAMCs based, in part, on the testimony of Holmes. Specifically, the ALJ stated, "[D]ue to additional evidence presented at the hearing such as the testimony of the claimant and the vocational expert, the determination made by state agency medical consultants are not accorded probative weight."

18

headaches a month. (Tr. 19.) As to factor four, the ALJ recognized that Holmes was taking a wide variety of medications, including Tiazac, Allegra, propoxyphene, Lovastatin, Tenormin, Imitrex, Topamax, Protonix, Tizanidine, a suppository medication, and Lyrica for the migraines and pain, and that the Lyrica made her drowsy and caused vertigo. (*Id.*) As to factors five and six, the ALJ noted that Holmes lay on ice packs and had received injections in her back for the pain. Because the ALJ properly went through the factors in evaluating Holmes' credibility and adequately explained the weight he assigned to Holmes' subjective complaints based on a thorough review of the other evidence in the record, the Court concludes that the ALJ did not err in evaluating Holmes' credibility.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until **December 10, 2010**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific

specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **December 10, 2010** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 19, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE